## SANITARY POLICEMEN AND THE CLASSIFIED SERVICE.

### Common Pleas Court of Cuyahoga County.

HENRY GOLLWITZER v. THE CITY OF CLEVELAND ET AL.

#### Decided, April 26, 1911.

*Civil Service—Sanitary Policemen Not Members of, When—Municipal Corporations—Mandamus—Sections* 4411, 4412 *and* 4484.

One who was appointed to the sanitary police force in February, 1910, but who had not passed a competitive examination conducted by the civil service commission and whose name was not certified by said commission, is not a member of the classified service nor entitled to the protection afforded to persons in that service, but holds a temporary appointment only, and is subject to summary dismissal, and mandamus will not lie to compel his restoration to the force after such dismissal.

*F. W. Treadway* and *Mathews & Orgill,* for complainant.
*Newton D. Baker,* City Solicitor, contra.

FORAN, J.

The relator, Henry Gollwitzer, brings this action against the City of Cleveland, the board of health of said city, the individual members comprising said board of health, and the mayor of the city as president of said board of health, and for cause of action says, that on or about the 1st day of February, 1910, the director of public service of the city of Cleveland, and then duly acting in the capacity of the board of health of said city, appointed him to membership in the sanitary police force of said city; that he thereupon entered upon and discharged and performed all the duties required of him by law as a member of the sanitary police of said city, until the 13th day of April, 1911, when he was summarily discharged from said employment as sanitary policeman by the executive officer of said board of health, without just cause; that no charges were preferred against him, and that he was given no opportunity of being heard in his own behalf, and that his dismissal was not based upon any cause or reason relating to his moral character or his fitness to perform the duties of a

sanitary police officer.   In a word, he says he was, at the time of his employment, in the classified service of the city of Cleveland, and entitled to the protection afforded persons in said classified service by the laws of the state.

This action of the board of health relator claims was without warrant or authority of law, and was contrary to the provisions of Sections 4411, 4412 and 4484 of the General Code of Ohio as amended by act of the General Assembly of Ohio, March 15, 1911; and by reason of the premises he prays that a writ of mandamus may issue commanding members of the board of health that they proceed to reinstate him in his position as sanitary policeman of said city, and commanding the defendants to pay and deliver to him the proper emoluments and salary of that office, according to law, etc.

So far as the questions here involved are concerned, the amendment of March 15, 1911, of Section 4411 of the General Code is wholly immaterial.   Section 4412 of the General Code provides that the board of health shall have exclusive control of its appointees, define their duties and fix their salaries; and also that "no member of the board shall be appointed as health officer; nor shall a member of the board or the health officer be appointed as one of the ward physicians."

The last paragraph of this section before the amendment of March 15, 1911, read as follows: "All such appointees shall serve during the pleasure of the board." This paragraph was amended by the act of March 15, 1911, so as to read as follows: "The board may suspend, but not remove, any member of the sanitary police now serving or hereafter appointed, for cause authorizing the dismissal of any person in the classified service, and shall certify such fact, together with the cause of such suspension, to the civil service commission, who, within five days from the receipt thereof, shall proceed to inquire into the cause of such suspension, and its judgment in the matter shall be final."

The only change in Section 4484, General Code, made by the amendatory act of March 15, 1911, is the insertion of the words "and of the sanitary police" after the words "fire department."

The sole purpose of the amendatory act of March 15, 1911, was to place the sanitary police in the same position with respect to

removals as members of the police and fire departments; that is, the right of appeal is extended to the sanitary police, in case of removal, to the civil service commission.

It will be noticed that the language of the amendment to Section 4412 of the General Code is, "the board may suspend, but not remove, any member of the sanitary police now serving or hereafter appointed," except for cause authorizing the dismissal of persons in the classified service. If the relator was in the classified service at the time of his dismissal, the amendment to Section 4412 would not, in our opinion, materially change his status, as the privisions of Section 4485 of the General Code afforded him all the protection given persons in the classified service, except members of the police and fire departments, who are given the right of appeal to the civil service commission by the provisions of Section 4484 of the General Code. The insertion, however, of the words "and of the sanitary police" at the end of Section 4484 of the amendatory act of March 15, 1911, would give the relator the same right of appeal to the civil service commission, provided, however, he really was a member of the sanitary police at the time of his removal.

It appears, therefore, that if the relator was, on April 13, 1911, a member of the sanitary police of the city of Cleveland, his removal and dismissal was irregular, contrary to law and void, and he is entitled to the relief prayed.for. If he was not a member of the sanitary police on that date, then the writ of mandamus is not available to him, and he must be denied the relief prayed for in his petition.

The question then arises, what is meant by the phrase "a member of the sanitary police"? Specifically speaking, the word "member" may mean a person considered in relation to any aggregate of individuals to which he belongs; but the term or phrase may mean more than the words imply, for the word "member" is often used elliptically; for instance, when we say a man is a member of Congress, the words might not convey a clear or an exact concept, for a member of Congress may be either a Senator or a member of the House of Representatives If by the phrase "a member of Congress" we mean a member of the House of Representatives, we mean a man twenty-five years

of age or over, and also a man who is a citizen of the United States and an elector of the state where he resides, and that he was elected by a majority of the legal voters of a duly constituted congressional district in his state, received a certificate of election, and was accepted by the House of Representatives and took the oath prescribed by that body. In like manner, when we say "a member of the sanitary police," we mean a man who, on the 29th day of April, 1908, was performing the duties and the functions of a member of the sanitary police force, and continued to perform these duties until the 1st day of January, 1910, and thereafter. Or we mean a man who, after the 1st day of January, 1910, possessed the qualifications prescribed by the civil service commission for sanitary policemen, that he entered and passed the competitive examination prescribed by that board or commission, and that he was one of three persons certified by that board or commission to the appointing board or the board of health, after January 1, 1910, and was duly appointed by the board of health as such sanitary policeman, that is, selected from the list of eligibles certified to the board of health by the civil service commission after January 1, 1910. If the relator does not fall into either of these classes, or belong to either of these classes, he is not entitled to the relief prayed for in his petition.

This raises the question whether the board of health and the sanitary police force appointed by that board were in the classified service on January 1, 1910, or whether the merit system applied at that time to members of the sanitary police force.

It may be said in passing that the amendment of March 15, 1911, to Sections 4411, 4412 and 4484 is a recognition by the Legislature that before March 15, 1911, the sanitary police force was in the classified service and subject to the requirements of the merit system. And this leads to the inquiry, when was the merit system extended to the board of health, or when was the department of public service placed in the classified service?

The General Assembly of the state of Ohio, by an act passed October 22, 1902 (O. L. of 1896, page 20), provided for the organization of cities and incorporated villages. This act is known as the municipal code. And by an act of the Legislature ap-

proved January 30, 1908 (99 O. L., 10), it was provided that in all acts, resolutions and proceedings relating to the act of October 22, 1902, entitled "an act to provide for the organization of cities and incorporated villages," or to any act amendatory thereof or supplemental thereto, the term "municipal code of 1902" shall be sufficient description and title of said act of October 22, 1902. In other words, the act of October 22, 1902, is by law declared to be entitled "municipal code of 1902," and acts amendatory thereof or supplemental thereto are to be considered as part of the municipal code of 1902.

Before the enactment of the municipal code of 1902, there was a growing popular demand for municipal reform, and, coincident therewith, a like demand for civil service reform, the two going hand in hand. For many years prior thereto the voracious rapacity of political barons created a saturnalia of spoils and corruption which culminated in the assassination of a president of the United States. This led to the enactment of federal laws providing for civil service reform, which was immediately followed by several of the states by the enactment of like laws. The municipal code of Ohio of 1902 was a tentative effort in this direction. Section 129 of this code provided "that the directors and officers provided in this act shall have the exclusive right, subject to the limitations herein prescribed, to appoint all officers, clerks and employes in their several respective departments or offices; and shall likewise, subject to the limitations herein prescribed, have sole power to remove or suspend any of such officers, clerks or employes."

This paragraph of Section 129 of the code laid the foundation for civil service reform and the application of the merit system to all departments of public service. In express terms, however, the merit system, by the code, was applied only to the police and fire departments, and no provision was made for the appointment of an independent civil service commission. The board of directors of public safety were given the power to classify the service of the police and fire departments in conformity with the ordinances of the council, and to conduct competitive examinations for admission to those departments of the public service, and also, by force of the act the board of directors of

public safety was the board to which final appeal might be made in case of removal of any member of the police or fire departments.

Inasmuch as the directors of the board of public safety were the appointees of the mayor of the city, the code of 1902 did not prove as successful, so far as civil service is concerned, as the Legislature probably anticipated. The great drawback to the final success of the act, within its intended scope of operation, was the withholding of certain positions in the public service from the operation of the vital principle of competition, the application of the principle of competition being applied only to members of the police and fire departments. By an act of the General Assembly of the state of Ohio passed April 29, 1908, the municipal code of 1902 was in large part amended, improved and amplified. This act is sometimes known as the Paine Law, which is, however, a misnomer. It might possibly be properly called the Paine amendment.

The paragraph of Section 129 of the municipal code of 1902 above referred to is re-enacted verbatim in the Paine amendment, and in Section 129 of the amendment. That this Paine amendment was and is in fact a part of the municipal code of 1902 is more than evident from a cursory reading of the amended sections. For instance, it is said in the amended Section 154, that "in making, altering or modifying such contracts, the director of public service shall be governed by the provisions of Section 143 *hereof*." There is no Section 143 in the Paine amendment; and the section referred to is, of course, Section 143 of the municipal code of 1902.

In Section 154*a* of the amendatory act reference is also made to Section 128; but there is no Section 128 in the amendatory act; and it follows, of course, that Section 128 referred to is Section 128 of the municipal code of 1902.

The words "this act," or "provided for in this act," occur frequently in the amendatory act; and refer, of course, to the original act, that is, the municipal code of 1902. The amendments provided for by the act of April 29, 1908, are, in general terms, these: first, government by boards—that is, boards of directors—is abolished, and thus the evils of divided responsibility

are minimized, and what may be termed the board conscience wholly eliminated. In place of government by boards of directors, the act provides for government by a single director, that is, a director of public service, a director of safety, and other directors. The amendatory act also provides for the appointment of a separate and distinct civil service commission, which is in no way under the domination or the control of or subject to the influence of the mayor of the city.

Section 158 of the municipal code of 1902, as amended by the act of April 29, 1908, extends the merit system to every department of public service in the city of Cleveland, or in the state. It provides specifically what persons shall be in the unclassified service, and among other persons so included in the unclassified service is the head or chief of the health department, or the board of health. Indeed Section 158 as amended is sweeping in its character, and was intended to and does extend the merit system to every single department of the public service in the cities. This being true, the merit system was, of course, extended to the board of health, and the board of health and its members were placed within the classified service, that is, those members of the board of health not especially exempted by Section 158 from the classified service and placed by express terms in the unclassified service.

Section 159 of the municipal code of 1902 as amended by the act of April 29, 1908, provides how applicants for admission into the classified service may obtain appointment in such service. It provides that such applicants shall be subjected to examination, which shall be competitive, public and open to all residents of the city; that the commission shall prepare rules and regulations adapted to carry out the purposes of the act, which rules shall provide for the grading of officers and positions similar in character into groups and divisions so as to promote the filling of offices and positions in the higher grades, as far as practicable, through promotions. And it is further provided that all applicants shall take rank upon the register as condidates in the order of their real standing, without reference to the priority of examination. Then Section 160 provides how appointments shall be made. This latter section provides that the appointing board

or officer shall notify the commission of any vacancy to be filled; that thereupon the commission shall certify to such board or officer the three candidates graded highest in the respective lists, as shown by the result of such competitive examinations; and that the board or officer to whom the list is certified must appoint one of the three so certified to him.

As it was foreseen that there would necessarily follow some confusion in extending the merit system to all departments of public service, the Legislature wisely provided in the amended Section 165 of the municipal code, that, to prevent the stoppage of public business, or to meet extraordinary exigencies which the act might entail or bring about, the mayor might make temporary appointments. The relator in this case claims that he was appointed on or about the 1st of February, 1910. By the terms of the Paine amendment to the municipal code, the merit system was applied to the board of health, and the board of health came within its provisions on the 1st day of January, 1910. There is no averment in the petition of the relator, nor is it claimed by his counsel, that he passed any competitive examination conducted by the civil service commission, provided for by the municipal code of 1902 and the amendment thereto, nor is it claimed that his name was certified to the director of public service, who was then acting in the capacity of the board of health, by the civil service commission; and it follows, necessarily and naturally, that his appointment was a mere temporary appointment, made in pursuance of Section 165 of the municipal code of 1902 and the amendments thereto.

We think it quite clear that the rule laid down by the circuit court of this county, and affirmed by the Supreme Court, governs in this case. In that case (reported in 10 N.P.[N.S.], 364, but not reported by the circuit or supreme courts), the inspector of street lighting, it appears, was discharged by the director of public service in June, 1910, and the vacancy thus created filled by appointment by Lea, the director of public service. The petition proceeds upon the theory that after the so-called Paine amendment to the municipal code of 1902 went into effect, the power of appointment in the director of public service existed only subject to the limitation that it should be exercised upon certified

lists of the civil service commission. This contention was denied by the director of public service, who asserted in his answer that the civil service commission not being prepared to furnish, and not having a certified list of eligibles to furnish to him, he made the appointment in his own behalf as director of public service; that the appointment so made was permanent, and endured beyond the time when the civil service commission was prepared and equipped to certify eligibles for appointments. In passing upon this question, the circuit court, Henry, J., said, "That the provisions of Section 4481 of the General Code were plainly imperative, and should be followed"; and added, "If delay ensued in following out this procedure, so as to threaten the safety of public business, the mayor might make temporary appointments until the commission could act."

The same is true in this case; and it must be presumed that the appointment of the relator, as alleged in his petition, was merely temporary, and to last only until the civil service commission was prepared to furnish the director of public service a certified list of eligibles for appointment in his department. If the appointment was made upon the assumption that the merit system did not extend to or apply to the sanitary police, the act was a palpable evasion of a plain duty.

The contention that the paragraph "all such appointees shall serve during the pleasure of the board," found in Section 4412, General Code, takes the sanitary police department out of the classified service, is wholly untenable. This language refers to removals, and not to appointments.

Section 4484 of the General Code, before the amendment of March 15, 1911, gave the removing boards or officers of all departments, except the police and fire departments, the same power of removal, subject to the limitations of Section 4485 of the General Code, which section applied to the board of health as well as to other boards and officers. In this connection, Section 162 of the municipal code of 1902, as amended April 29, 1908, is quite illuminating as to the intention of the Legislature in extending the merit system to all departments of the public service, the sanitary police included. The two sections of the General Code, 4484 and 4485, seem to be carved out of this original Section 162, as amended, of the municipal code of 1902. This section

will be found on page 567 of 99 O. L., and the following extract is significant: "Nothing in *this act* shall prevent the dismissal or discharge of any appointee by the removing board or officer, except that the chiefs and members of the police and fire departments shall be dismissed only as provided in Section 152 of this act."

If the Paine amendment to the municipal code of 1902 is to stand by itself, the phrase "Section 152 of this act" is incomprehensible, because the amendatory Paine act does not contain any such section. The language refers plainly and explicitly to Section 152 of the act of October 22, 1902, of the municipal code act of 1902; and the Paine act being merely amendatory of the act of October 22, 1902, Section 158 of the municipal code of 1902, as thus amended, clearly and unequivocally extends the merit system to all departments of the public service, the sanitary police included.

The question of primary interest and importance involved in this action is not one of removal, but one of appointment. The main object of the Legislature was to meet and accede to the popular and impelling demand that honest business methods be applied to local public service, and that appointments be made on the basis of intelligence and capacity, rather than on the basis of party loyalty and activity. When appointments are made from lists of eligibles furnished by an honest, efficient and nonpartisan commission, removals for partisan reasons practically cease. If the appointing board or officer must select persons to fill vacancies from lists of eligibles certified to it or him by a commission over which it or he has no control and whose action the board or officer can not influence, the temptation to make removals for other than cause for the good of the service no longer exists. And indeed it may be said that the power or the right to remove a person from a place or an office should not be too rigidly restricted. There are many persons of undoubted intelligence and capacity who may be illy adapted to efficiently discharge a particular public service; and unquestionably occasions may often arise when the good of the service imperatively demands the dismissal of such person. A person who, by reason of constitutional idiosyncrasy, would prefer to be a factional leader in the Realm of Chaos, rather than a subject in the King-

dom of Order, may become so absolutely insubordinate as to demoralize the efficient management of a whole department of public service.   The chief of any department, in order to obtain the best possible results, must have the active co-operation, as well as the loyal support, of all his subordinates.   An irremovable subordinate is too apt to lose the mainspring of action, as well as all sense of responsibility.   Indeed it may be questioned whether the right of appeal is not injurious rather than beneficial to the orderly progress of the civil service reform movement.

The question whether the so-called Krause law is a violation of Section 27 of Article II of the Constitution, in that it seeks to retain in office incumbents thereof, not. being material to the determination of the issues involved in this action, it will not be considered or passed upon.

For the reasons herein indicated, the prayer of the relator is denied, and the demurrer of the city sustained.   To all of which the plaintiff excepts.